IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


UNITED STATES COMMODITY          :
FUTURES TRADING                  :
COMMISSION,                      :
                                 :
        Plaintiff,               :
                                 :     CIVIL ACTION NO.
        v.                       :     1:05-CV-0293-JOF
                                 :
PAUL ATHA,                       :
CHRISTOPHER MCDONALD,            :
and MICHAEL WHALEN,              :
                                 :
        Defendants.              :


## OPINION AND ORDER


This matter is before the court on Defendants' joint motion to dismiss [10-1]; Plaintiff's motion to supplement response [33-1]; and Plaintiff's motion to supplement response [38-1].

**I.     Background**

   **A.     Procedural History and Facts Alleged in Complaint**

On February 1, 2005, the Commodity Futures Trading Commission ("CFTC") filed suit against Defendants Christopher McDonald, Paul Atha, and Michael Whalen, alleging that during the period of January 2000 and ending in late 2000 or early 2001, they violated Sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13b,

13(a)(2), 13c(a), by knowingly submitting false reports of market information to natural gas price indexes and by intentionally attempting to manipulate the price of natural gas.

As alleged in the complaint, Defendant Atha was a natural gas trader for Mirant America's Energy Marketing, L.P.  Defendant McDonald was also employed by Mirant as Vice President and Chief Commercial Officer and Director of West Desk.  Defendant McDonald supervised traders, including Defendant Atha, and himself traded and marketed contracts for fixed price and index-based over-the-counter natural gas.  Defendant Whalen was also employed by Mirant at the West Desk through May 2000 and was supervised by Defendant McDonald.  After May 2000, Defendant Whalen worked as Director of Financial Trading in the Energy Commodities Business Unit of Cinergy Corporation.

Natural gas is a commodity typically transported in interstate commerce through a network of pipelines across the United States.  Mirant and Cinergy buy and sell natural gas for profit and their traders engage in transactions for the actual physical delivery of natural gas.  Traders and companies also report natural gas market information to companies that calculate natural gas price indexes ("indexes").  The indexes include *Inside FERC Gas Market Report ("IFERC")*, *Gas Daily*, and *Natural Gas Intelligence (NGI")*.  The reported market information includes price and volume information for natural gas transactions entered into for delivery at a specific location or hub.  Participants in the natural gas industry use these price indexes to determine price and settlement of index trades, as well as to assess price risks.  "The price and volume information reported to those indexes was market information

2

that affects or tends to affect the price of natural gas, a commodity in interstate commerce." Cmplt., ¶ 19.

Defendant Atha provided transaction information regarding Mirant's trades to *IFERC*, *Gas Daily*, and *NGI*.   These indexes requested information based on a company's fixed-price baseload deals.   Baseload deals are trades requiring the delivery of a specific quantity of natural gas on each day of the following month.   Defendant Atha knew the indexes used the information provided by him to calculate their indexes.   Defendant Atha did not use information from Mirant's fixed-price baseload deals; rather, he "fabricated the price and volume information he reported based upon, among other things, price and volume information he received at regular morning meetings with other West Desk traders and from [Defendant] McDonald."   *Id.*, ¶ 25.   The volumes and weighted average prices provided by Defendant McDonald to Defendant Atha were not from McDonald's actual trade or from any Mirant baseload deals.   Defendant Atha used this information to fabricate "trades to report for each hub by making up prices, volumes, trade dates, and counterparties.   When fabricating the trades, Atha ensured that the sum of the fabricated trades equaled the predetermined total volume and weighted average prices he wanted to report."   *Id.*, ¶ 31.

Defendant McDonald knew such conduct was wrong because he informed executives in the company that "price reporting misconduct was occurring on the West Desk, including, among other things, the reporting of false counterparties to the indexes."   *Id.*, ¶ 35.   The false and misleading reports provided by Defendants to *IFERC*, *Gas Daily*, and *NGI* was "market

3

information that affects or tends to affect the price of natural gas, a commodity in interstate commerce," and Defendants "knowingly delivered, or cause to be delivered, those reports in an attempt to manipulate the price of natural gas." *Id.*, ¶ 37. "If the attempted manipulation of the price of natural gas had been successful, it could have affected the price of natural gas, a commodity in interstate commerce, and the price of natural gas futures and options contracts traded on the New York Mercantile Exchange ("NYMEX")." *Id.*, ¶ 38.

On July 27, 2000, Defendant McDonald called Defendant Whalen at Cinergy and told him that "he (McDonald) wanted the August *IFERC* index price at the Permian delivery point to be low." *Id.*, ¶ 39. McDonald informed Whalen that he (McDonald) would falsely identify Cinergy as a counterparty to the transactions. *Id.*, ¶ 41. Defendant Whalen agreed to report the same false transactions as McDonald and identify Mirant as the counterparty. *Id.*, ¶ 42. During the conversation, McDonald and Whalen agreed to report trades to achieve a "low Permian index." They further agreed on a particular volume to report. *Id.*, ¶ 44 (reflecting transcription of call); ¶ 45 (transcribing similar call the following day on July 28, 2000). Defendant Whalen stated, "I'm going to send it in as a blanket sheet, and I'll need to put like a bunch of other companies on there as well, right, to make it more believable?" *Id.*, ¶ 45. Defendant Whalen then called Defendant Atha to further coordinate the reporting. *Id.*, ¶¶ 46-47 (Defendant Whalen informing Defendant Atha that a reporter from *IFERC* had already called and did not want him to suspect anything and Defendant Atha responding that reporter had no reason to know of an association between Whalen and Atha).

4

Defendant Atha delivered a report to *IFERC*, *Gas Daily*, and *NGI* on July 31, 2000, that included the prearranged fabricated trades.  *Id.*, ¶ 48.  Defendant Whalen did the same.  *Id.*, ¶ 49.  Defendants intended for their false reports to be used to calculate the index price of natural gas.  *Id.*, ¶ 50.  "If the attempted manipulation of the price of natural gas had been successful, it could have affected the price of natural gas, a commodity in interstate commerce, and the price of natural gas futures and options contracts traded on the New York Mercantile Exchange ("NYMEX")."  *Id.*, ¶ 51.

Defendants engaged in a similar fabrication on September 26, 2000, through a report delivered by Defendant Atha to *IFERC* and a telephone conversation between Defendant Atha and an employee of *IFERC*.  *Id.*, ¶¶ 52-61.  On December 8, 2000, Defendant Whalen attempted to manipulate the price of natural gas at the Waha delivery point by submitting fabricated transaction information.  *Id.*, ¶¶ 62-64 (during a conversation between Defendant Whalen and McDonald, Whalen stated, "it would help me out if you guys report a high Waha, and we'll buy you dinner if you do it," to which McDonald responded, "All right.  Well, I don't want to have a recorded phone call saying we are going that, but –").

Under Count I of the complaint, Plaintiff contends that Defendants McDonald and Atha violated Section 9(a)(2) of the CEA, 7 U.S.C. § 13(a)(2), by delivering the false reports to *IFERC*, *Gas Daily*, and *NGI*, and that Defendant Whalen aided and abetted their activities.  Count II alleges that Defendant Whalen violated the CEA by delivering his own false reports and was aided and abetted in doing so by Defendants McDonald and Atha.  Count III contends

5

that all Defendants attempted to manipulate the price of natural gas in violation of Sections 6(c), 6(d), and 9(a)(2) of the CEA, 7 U.S.C. §§ 9, 13(b) and 13(a)(2). "Defendants had the specific intent to manipulate the price of natural gas at multiple delivery points when they engaged in the overt act(s) of delivering . . . false or misleading or knowingly inaccurate reports concerning natural gas transactions to issuers of natural gas price indexes." *Id.*, ¶ 80.

**B.      Contentions**

Defendants filed a joint motion to dismiss in which they contend that (1) cash forward natural gas contracts are not within the scope of the CEA, (2) Counts I and II fail to state how Defendants' statements affected or tended to affect interstate commerce, (3) Counts I and II fail to state that Defendant filed a "report" within the meaning of the CEA, (4) Count III fails to allege that Defendants had the opportunity to affect the natural gas market price, and (5) vague and ambiguous terms in the CEA failed to give Defendants fair notice of the Government's current interpretation of those terms. Plaintiff responds that the CEA's limited exemptions and exclusions do not defeat the court's subject matter jurisdiction over its complaint. Section 9(a)(2) is not unconstitutionally vague and sufficiently describes "report" to include oral conversations or information submitted by Defendants to the indexes. Finally, Plaintiff argues that it has sufficiently alleged Defendants' specific intent, false reporting, and attempted manipulation.

In their reply brief, Defendants aver for the first time that Plaintiff's complaint fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). In

6

supplemental responses, Plaintiff responds that Rule 9(b) does not apply to the allegation in its complaint.[1]

## II.    Discussion

### A.    Scope of CEA

#### 1.    Cash Forward Contract Exclusion

Defendants contend that the CEA was established to regulate futures contracts and options only, not the cash forward contracts alleged in Plaintiff's complaint.    Defendants argue that the CFTC's regulatory scheme does not apply to private transactions which create enforceable obligations between commercial parties to deliver a commodity in the future.

The court finds it unnecessary to comment on the merits of Defendants' argument here because it is irrelevant to the conduct alleged in the complaint.    The complaint centers around false reporting and attempted manipulation of gas prices.    It does not relate to cash forward contracts per se.   Section 9(a)(2) of the CEA, 7 U.S.C. § 13(a)(2), prohibits

> Any person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery . . . or knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communications false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce.

---

[1]The court GRANTS Plaintiff's motions to supplement its response [33-1 and 38-1].

*Id.* Thus, the manipulation of the price of any commodity is prohibited.  This language is not limited to contracts for the sale of a commodity in the future and the conduct described in Plaintiff's complaint comes within the scope of the CEA.

                    2.      <u>Natural Gas Exemptions</u>

Defendants also contend that other provisions of the CEA exempt their actions from coverage.  Title 7 U.S.C. § 2(g) states that the CEA shall not apply to

> any agreement, contract, or transaction in a commodity other than an agricultural commodity if the agreement, contract, or transaction is – (1) entered into only between persons that are eligible contract participants at the time they inter into the agreement, contract, or transaction; (2) subject to individual negotiation by the parties; and (3) not executed or traded on a trading facility.

AO 72A
(Rev.8/82)

*Id.* Title 7 U.S.C. § 2(h)(1) provides:

> (1)    Except as provided in paragraph (2), nothing in this chapter shall apply to a contract, agreement, or transaction in an exempt commodity which – (A) is entered into solely between persons that are eligible contract participants at the time the persons enter into the agreement, contract, or transaction; and (B) is not entered into on a trading facility.

*Id.* An "exempt commodity" is defined as any commodity that is not an "excluded commodity" or an "agricultural commodity." *See* 7 U.S.C. § 1a(14). Natural gas is an "exempt commodity" under the CEA.

Because natural gas is an exempt commodity and is not an agricultural commodity, Defendants argue that § 2(g) and § 2(h)(1) carve out an exclusion for their activities under the CEA. However, § 2(g) and § 2(h)(1) refer only to "contract, agreement, or transaction" activities. *See id.* The reporting activities alleged by Plaintiff are not a "contract, agreement, or transaction," and thus, the exceptions articulated in § 2(g) and § 2(h)(1) do not apply to Defendants' alleged activities.[2]

---

[2]Plaintiff also notes that § 2(g) and § 2(h) were amendments added in December 2000. As such, it is not clear they would apply to Defendants' conduct in the year 2000. The court need not address this issue as even considering the amendments, the court finds they do not exclude Defendants' alleged activities.

9

For the same reason, the court rejects Defendants' argument that the "1993 exemption order" also demonstrates that Defendants' actions are beyond the purview of the CFTC. The 1993 exemption order provides:

> The Commission . . . hereby exempts from the [CEA], except provisions of Section 6(c), 6(d) and 9(a)(2) of the Act, to the extent that these provisions prohibit manipulation of the market place of any commodity in interstate commerce or for future delivery on or subject to the rules of any contract market . . . contracts for the purchase and sale of crude oil, condensates, natural gas, natural gas liquids . . . .

58 Fed. Reg. 21286-02, 21294 (1993). Again, on its face, this exception applies to "contracts" and not to reporting. *See also id*. at 21,291 (noting that persons "engaged in activity otherwise subject to [the CEA] would not be exempt for such activity, even if it were connected to their exempted . . . (energy contract) activity").

Furthermore, the exemption, itself, contains an exception for manipulation of the market place under Sections 6(c), 6(d), and 9(a)(2). *See also* 7 U.S.C. § 2(h)(2)(c) (extending coverage of the CEA under § 13(a)(2) to transactions in exempted commodities which apply "to the extent such section prohibits manipulation of the market price of any commodity in interstate commerce"). Contrary to Defendants' assertion, Plaintiff's complaint is not limited to "attempted manipulation and false reporting of forward contracts in natural gas." Defendants' Reply, at 8. The theory of Plaintiff's complaint is that Defendants falsely reported the price and volume of its forwards contracts in natural gas so as to influence the price of natural gas and thereby the price of futures contracts on NYMEX. The court offers

10

no opinion as to whether Plaintiff will be able to prove that theory, but Plaintiff's allegations are sufficient to come within the jurisdiction of the CEA.   As such, the court finds that Plaintiff's manipulation allegations also come within the scope of the CEA.

    **B.**    **Rule 12(b)(6)**

        1.    <u>False Reporting</u>

To state a claim for false reporting, Plaintiff must prove:   (1) that a defendant knowingly delivered market reports or market information through interstate commerce, (2) that the information was knowingly false or misleading; and (3) that the information affected or tended to affect the price of a commodity in interstate commerce.   *See United States v. Valencia*, 394 F.3d 352 (5th Cir. 2004).

Defendants contend that Plaintiff's complaint fails to allege "how" Defendants' information actually affected or tended to affect natural gas prices.   They further assert that Plaintiff must provide "supporting allegations" as to how the index prices could affect the price on NYMEX.

The court finds these are not the proper questions upon a Rule 12(b)(6) motion to dismiss.   In its complaint, Plaintiff alleges each of the three elements of a claim for false reporting.   As the court's review of Plaintiff's complaint above shows, Plaintiff alleges that Defendants knowingly delivered the market reports, that the information was knowingly false or misleading, and that the "price and volume information reported to those indexes was market information that affects or tends to affect the price of natural gas, a commodity in

interstate commerce."   Cmplt., ¶ 19.   At the 12(b)(6) stage, Plaintiff need not do more. Defendants' assertions that their actions were "de minimus" may – or may not – become relevant at a later point in the litigation.

Defendants next argue that the electronic documents allegedly sent by Defendants to the indexes and conversations with index reporters are not "reports" within the meaning of § 9(a)(2).   Defendants point to other sections of the CEA which describe "reports" as more formal records or documents.   *See* 7 U.S.C. § 6g and 17 C.F.R. § 17.00 (discussing reports that futures commission merchants must file); § 6i and 17 C.F.R. § 16.00 (requirement that person making contract for future delivery must file report regarding such transactions). Defendants compare this use of "report" to the CEA's use of "statement" to describe less formal communications.   *See* 7 U.S.C. § 13(a)(4) (prohibiting false representations, entries, or statements to exchanges and other officials).   These sections, however, have no relation to the section cited by Plaintiff in its complaint.

In fact, Section 9(a)(2) of the CEA provides its own description of "reports," stating it is a violation for a person

> knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by **telegraph, telephone, wireless, or other means of communications** false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce.

7 U.S.C. § 13(a)(2) (emphasis added).   The varied means of providing such reports belies Defendants' claim that reports encompass only "formal" records.   The plain language of

12

Section 9(a)(2) also contradicts Defendants' assertion that reports are limited to information provided to exchanges or their officials. *See* Motion, at 19-20. Thus, the court denies Defendants' motion to dismiss with respect to the false reporting claim.

2.   Attempted Manipulation

To prove attempted manipulation, Plaintiff must prove (1) a specific intent to affect the market price, and (2) overt acts in furtherance of that specific intent. *See In re Hohenberg Bros.*, [1975-1977 Trans. Binder] Comm. Fut. L. Rep. (CCH), ¶ 20,271 (CFTC Feb. 18, 1977). Intent may be inferred from the totality of the circumstances. *Id.* Defendants contend that Plaintiff failed to show Defendants had the specific intent to affect the market price of natural gas. The court disagrees. Plaintiff's complaint cited transcriptions of numerous conversations among Defendants McDonald, Atha, and Whalen which demonstrate intent. *See* Cmplt., ¶¶ 39-44, 45-47. For example, McDonald states, "I'd like a low Permian index. Do you need the same?" Whalen responds, "Yeah, oh yeah, absolutely." Further discussions about price and volume provide sufficient allegations that Defendants McDonald, Whalen, and Atha were fabricating price and volume reports in order to achieve a desired price.

The complaint also alleges that Defendants Atha and McDonald made up fictitious counterparties to their transactions so that the transactions would have greater credibility and force on the indexes. *Id.*, ¶¶ 20-34. Finally, the complaint alleges a conversation between Defendant McDonald and Whalen where Whalen states, "Well, it would help me out if you

13

guys report a high Waha, and we'll buy you dinner if you do," and McDonald responds, "All right. Well, I don't want to have a recorded call saying that we are doing that." *Id.*, ¶ 63. The totality of circumstances illustrated by the activities discussed in the complaint shows that Plaintiff has sufficiently alleged specific intent to affect market price, and the court denies Defendants' motion to dismiss on this basis.

### C.      Rule 9(b)

In their reply brief, Defendants contend that because Plaintiff's complaint sounds in fraud, it must comply with the heightened pleadings standards set forth in Federal Rule of Civil Procedure 9(b). First, the court need not consider an argument raised for the first time in a reply brief. *See United States v. Whitesell*, 314 F.3d 1251, 1255 (11th Cir. 2002). Second, it is not clear Rule 9(b) applies to false reporting or attempted manipulation. *Cf. In re Natural Gas*, 358 F. Supp. 2d 336, 343 (S.D.N.Y. 2005) (applying relaxed pleading standard of Rule 9(b) to manipulation claim), *with CFTC v. Bradley*, Civil Action No. 05-CV-62-JHP (N.D. Okla., Aug. 1, 2005) (finding Rule 9(b) does not apply). Third, even if Rule 9(b) did apply, Plaintiff's complaint has satisfied its requirements.

Under Rule 9(b), in all averments of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Eleventh Circuit has held that Rule 9(b) may be satisfied "if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place

14

of each statement and the person responsible for making it (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled plaintiff, and (4) what defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations quotes omitted).

As the court described above, Plaintiff's complaint sets forth in particular detail the alleged manipulative acts and reporting; it recounts the dates upon which those acts occurred and which Defendants made which statements.   Finally, the complaint alleges that the information provided to the indexes was the type of market information that could affect the price of natural gas.   Thus, the court finds that Plaintiff's complaint satisfies the requirements of Rule 9(b).

### D.    Void for Vagueness

Defendants contend that 7 U.S.C. § 13(a)(2) violates the "fair notice" doctrine because Defendants are not licensed by the CFTC, and at the time of their conduct, the CFTC had not given any guidance that indicated it would interpret the CEA in the manner advanced in the complaint.   Defendants aver that they had notice only that the Federal Energy Reserve Commission (FERC) and not the CFTC would regulate their activities.   Defendants argue that they "were not put on notice that their voluntary participation in the 'index process' would bring their actions under the purview of a Commission whose purpose is to oversee 'on exchange trading.'"  Defendants' Reply, at 11.

15

"Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess as to its meaning and differ as to its application." *Mason v. Florida Bar*, 208 F.3d 952, 958-59 (11th Cir. 2000) (quotation and citations omitted). "The root of the vagueness doctrine is a rough idea of fairness. The void-for-vagueness doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws. *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

Defendants argue that in hearings before Congress, officials with the CFTC have stated that cash forward markets are not regulated by the CFTC. As the court has explained above, however, Plaintiff's complaint is not an attempt to regulate the cash forward market, but rather to address an attempted manipulation of the market price of natural gas. Defendants can point to no guidance from the CFTC that it would not regulate attempts to manipulate price. Defendants also aver that the terms "affect or tend to affect" the price of a commodity or to "manipulate" a commodity market are vague and ambiguous. Defendants do not explain how these terms are vague or ambiguous, and the court cannot develop any such argument for them. Furthermore, several courts have referred to and explained a theory of market manipulation through false rumors concerning price or supply. *See, e.g., In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1046 (N.D. Ill. 1995); *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir.

16

1971) (noting the means of manipulation are "limited only by the ingenuity of man"); *United Egg Prod. v. Bauer Int'l Corp.*, 311 F. Supp. 1375, 1383 (S.D.N.Y. 1970).

Moreover, Defendants' own conduct as alleged in the complaint shows they understood their activities to be improper. *See* Cmplt., ¶ 63 (McDonald stating he does not want a recorded conversation saying what they were doing); ¶ 35 (McDonald informing his supervisors that "reporting misconduct" was occurring). A notice argument "cannot be used as a shield by one who is already bent on serious wrongdoing." *United States v. Cueto*, 151 F.3d 620, 631 (7th Cir. 1998) (quoting *United States v. Griffin*, 589 F.2d 200, 206 (5th Cir. 1979)).

Finally, Defendants argue that § 13(a)(2) violates fair notice because they believed they were regulated by FERC and not the CFTC. To be clear, with respect to this argument, Defendants do not contend they did not know their conduct was wrongful but rather that the "wrong" agency was attempting to hold then liable for such conduct. Defendants, however, cite no case, and the court can find none, which extends the fair notice doctrine to the specificity of which governmental entity may regulate conduct. For the foregoing reasons, the court denies Defendants' motion to dismiss on the basis of the "fair notice" or void-for-vagueness doctrines.

## III.    Conclusion

17

The court DENIES Defendants' joint motion to dismiss [10-1]; GRANTS Plaintiff's motion to supplement response [33-1]; and GRANTS Plaintiff's motion to supplement response [38-1].

**IT IS SO ORDERED** this 17th day of March 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

18